UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.

STEPHEN E. BUYER,

        Defendant,

and

JONI L. BUYER,

        Relief Defendant.

Case No. 1:22-cv-6279

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") alleges the following:

### SUMMARY

1. This case arises from insider trading by Defendant Stephen E. Buyer ("Buyer"). After serving as a member of the U.S. House of Representatives, Buyer left Congress in 2011 and set up a consulting company called the Steve Buyer Group. As a consultant, Buyer leveraged his congressional experience to help clients with issues related to, among other things, the U.S. Department of Veterans Affairs ("VA") and the telecommunications industry. In 2018 and 2019, however, Buyer misappropriated material nonpublic information from two of his clients and used that information to trade securities for his own benefit.

2. First, in 2018, while consulting for T-Mobile US, Inc. ("T-Mobile"), Buyer learned that T-Mobile planned to acquire Sprint Corporation ("Sprint"). The planned acquisition was

material nonpublic information. Although Buyer owed a duty to T-Mobile to keep its information confidential, Buyer misappropriated that information from T-Mobile and used it to buy shares of stock. Before the Sprint acquisition was disclosed publicly, Buyer spent more than $568,000 to purchase 112,675 shares of Sprint stock. Buyer spread those purchases among accounts for himself, a joint account with his cousin, and an account for a woman with whom he had a romantic relationship ("Friend-1"). After news of the planned acquisition was disclosed publicly in April 2018, Buyer reaped ill-gotten gains of approximately $107,987.

3. The next year, Buyer repeated this conduct on a larger scale. In 2019, while consulting for Guidehouse LLP ("Guidehouse"), Buyer learned that Guidehouse planned to acquire Navigant Consulting, Inc. ("Navigant"). That planned acquisition also was material nonpublic information. Although Buyer owed a duty to Guidehouse to keep its information confidential, Buyer misappropriated that information from Guidehouse and, again, used it to trade shares of stock. Before the Navigant acquisition was announced publicly, Buyer spent more than $1 million to purchase 46,654 shares of Navigant stock. Buyer spread those purchases across accounts for himself, joint accounts with his son and wife, another account for his wife, and an account for Friend-1. Then, after the acquisition was announced publicly in August 2019, Buyer received ill-gotten gains of approximately $227,742.

4. In sum, two years in a row, Buyer learned that his clients were planning corporate acquisitions, information that was material and nonpublic; he misappropriated that information from his clients; and he used it to purchase stock in the acquisition targets shortly before the deals were disclosed publicly. As a result, Buyer generated more than $335,729 in illicit profits.

5. By his conduct alleged herein, Buyer violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17

C.F.R. § 240.10b-5.  Accordingly, the SEC brings this action seeking permanent injunctive relief, an officer and director bar, disgorgement of ill-gotten gains plus prejudgment interest, civil money penalties, and any further relief that the Court deems appropriate.

## JURISDICTION AND VENUE

6.  The Court has subject matter jurisdiction over this action pursuant to Sections 21(d), 21A, and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u-1, and 78aa.

7.  The Court has personal jurisdiction over Buyer, and venue is proper in this district, under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain acts and transactions constituting the violations occurred in this district.  For example, at the time that Buyer committed insider trading in the stock of Sprint and Navigant, the stock of both companies traded on the New York Stock Exchange ("NYSE"), which is located in this district.

## DEFENDANT AND RELIEF DEFENDANT

8.  **Defendant Stephen E. Buyer**, age 63, is a resident of Noblesville, Indiana.  Buyer graduated from law school in 1984.  From 1984 through 1992, Buyer served in the U.S. Army, served as a Special Assistant U.S. Attorney, and then worked as a lawyer in private practice.  From 1993 to 2011, Buyer served as a member of the U.S. House of Representatives from Indiana.  While in Congress, Buyer served on the House Committee on Veterans' Affairs and the House Committee on Energy and Commerce.  Through those roles, Buyer became familiar with issues related to the VA and the telecommunications industry.  From 2019 through at least 2021, Buyer was on the board of directors of a Canadian company that is registered with the SEC as a foreign private issuer.  When the SEC issued a subpoena for Buyer to provide investigative testimony, Buyer invoked his Fifth Amendment privilege against self-incrimination

3

and refused to testify about, among other things, his trading in the securities of Sprint and Navigant.

9. **Relief Defendant Joni L. Buyer** ("Joni Buyer"), age 64, is a resident of Noblesville, Indiana. At all relevant times, Joni Buyer was married to Buyer. The SEC does not allege that Joni Buyer engaged in any legal wrongdoing. She is a Relief Defendant because Buyer executed certain trades on the basis of material nonpublic information in Joni Buyer's brokerage account, and thus Joni Buyer received ill-gotten gains.

**RELEVANT ENTITIES AND INDIVIDUALS**

10. **Sprint Corporation** was at all relevant times a Delaware corporation headquartered in Overland Park, Kansas that offered wireless and wireline communication products and services. Sprint's common stock was registered with the Commission under Section 12(b) of the Exchange Act and traded on the NYSE under the symbol "S" until April 13, 2020, when Sprint filed a Form 15 to terminate its registration due to its acquisition by T-Mobile.

11. **T-Mobile US, Inc.** was at all relevant times a Delaware corporation headquartered in Bellevue, Washington that provided wireless communication services. T-Mobile is a public company, and its common stock is registered with the Commission under Section 12(b) of the Exchange Act and trades on the NASDAQ under the symbol "TMUS."

12. **Navigant Consulting, Inc.** was at all relevant times a Delaware corporation headquartered in Chicago, Illinois that provided consulting services to the healthcare, energy, and financial services industries. Navigant's common stock was registered with the Commission under Section 12(b) of the Exchange Act and traded on the NYSE under the symbol "NCI" until October 23, 2019, when Navigant filed a Form 15 to terminate its registration due to its acquisition by Guidehouse.

13. **Guidehouse LLP** was at all relevant times a privately-held company based in McLean, Virginia that provided consulting services to government clients. Prior to 2018, Guidehouse operated under a different name and was part of a large consulting firm. In 2018, a private equity firm acquired the business and changed its name to Guidehouse.

14. **Steve Buyer Group, LLC** was a privately-held company that Buyer established in 2011, after he left Congress. The Steve Buyer Group provided consulting and lobbying services for clients dealing with, among other things, federal government relations, telecommunications, the VA, and heath care revenue cycle management ("RCM"), which is the financial process that healthcare facilities use to track patient care from initial appointment through final payment. The partners in the Steve Buyer Group were Buyer and the former Chief of Staff from Buyer's congressional office ("Buyer's Partner").

15. **Friend-1**, age 57, is a current resident of Florida who previously resided in Indiana. In or around 2006, Buyer and Friend-1 began a romantic relationship. As described herein, Buyer executed certain trades on the basis of material nonpublic information in Friend-1's brokerage account.

## FACTS

**I.  Buyer Purchased Sprint Stock Based on Material Nonpublic Information Misappropriated From His Client**

    **A.  Buyer Worked as a Consultant for T-Mobile**

16. In December 2016, Buyer's firm, the Steve Buyer Group, entered into a consulting agreement with T-Mobile. T-Mobile and the Steve Buyer Group, including Buyer, continued working under the consulting agreement through at least the end of 2019.

17. Under the consulting agreement, the Steve Buyer Group agreed to provide consulting services relating to, among other issues, public policy, outreach efforts, and working

5

with government organizations.  Also, under the consulting agreement, the Steve Buyer Group, including Buyer, agreed to protect T-Mobile's confidential information.

18. During Buyer's consulting work for T-Mobile, he communicated with, among others, T-Mobile's Vice President of Federal Legislative Affairs ("T-Mobile VP").

**B.     Buyer Learned that T-Mobile Planned to Acquire Sprint**

19. In 2017, T-Mobile and Sprint engaged in discussions about a possible business combination.  But in November 2017, the companies announced that they ended their merger discussions without any agreement.

20. Several months later, in or around February 2018, T-Mobile and Sprint reengaged in confidential communications about a potential merger in which T-Mobile would acquire Sprint.  The planned acquisition of Sprint was material nonpublic information.

21. By no later than March 27, 2018, the T-Mobile VP learned of the planned acquisition in the course of his work for T-Mobile.  On or around that date, the T-Mobile VP received instructions from T-Mobile to begin "outreach" to T-Mobile's core consultants, including Buyer, regarding the acquisition.

22. From March 28 through March 30, 2018, the T-Mobile VP and Buyer attended a golf trip in Miami, Florida.  They played golf together on March 28, 2018.

23. By no later than the end of the golf trip, on March 30, 2018, the T-Mobile VP had informed Buyer of the planned Sprint acquisition.  The T-Mobile VP expected Buyer to keep that information confidential and use it only for purposes of Buyer's consulting work for T-Mobile.  Buyer knew, or was reckless in not knowing, that T-Mobile's planned acquisition of Sprint was material nonpublic information and that he was required to keep that information confidential.

24. By April 3, 2018, the T-Mobile VP had informed his "core group" of consultants, including Buyer, about the planned acquisition. T-Mobile also explained to its consultants, including Buyer, that they were required to keep information about the acquisition confidential.

**C.  Buyer Purchased Sprint Stock Before the Acquisition Was Announced**

25. On March 29, 2018, the day after he played golf with the T-Mobile VP, Buyer began purchasing the stock of Sprint – the company that his client planned to acquire.

26. Between March 29, 2018, and April 5, 2018, while in possession of the material nonpublic information that T-Mobile planned to acquire Sprint, Buyer purchased 112,675 shares of Sprint stock, at a cost of more than $568,000.

27. Buyer spread his purchases across four separate accounts, including (1) an individual retirement account ("IRA") owned by Friend-1; (2) a joint account owned by Buyer and his cousin; (3) an IRA owned by Buyer; and (4) a simplified employee pension IRA ("SEP IRA") owned by Buyer:

| Sprint Stock Purchases | | | |
|---|---|---|---|
| **Date** | **Account** | **Shares** | **Cost** |
| 3/29/18 | Friend-1 IRA | 2,675 | $12,965.19 |
| 3/29/18 | Buyer joint account with cousin | 20,000 | $96,800.00 |
| 3/29/18 | Buyer IRA | 20,000 | $96,798.00 |
| 4/3/18 | Buyer IRA | 10,000 | $49,500.00 |
| 4/5/18 | Buyer SEP IRA | 60,000 | $312,000.00 |
| **Total** | | **112,675** | **$568,063.19** |

28.     The purchases of Sprint stock that Buyer made in Friend-1's account on March 29, 2018, were the first purchases of any security in that account.

29.     Additionally, on or around April 2, 2018, in the midst of purchasing Sprint shares, Buyer attempted to cover up the fact that his purchases were based on material nonpublic information.  Specifically, Buyer printed out a public document from Zacks Investment Research ("Zacks"), showing Sprint stock purchases by insiders.  Buyer then made handwritten notes on the document to create the false impression that his purchases were based on information in the Zacks document, and not on material nonpublic information.

### D.     When the Sprint Acquisition Was Disclosed Publicly, Buyer Profited

30.     On or about April 10, 2018, news of the planned Sprint acquisition leaked and was disclosed publicly in media reports.

31.     As a result, the price of Sprint shares increased more than 16%, from a closing price of $5.14/share on trading volume of 7,161,365 shares on April 9, 2018 (the day before the news leak), to a closing price of $6.00/share on trading volume of 38,594,624 shares on April 11, 2018 (the day after the news leaked to the market).

32.     Thus, as of April 11, 2018, the Sprint shares that Buyer purchased increased in value by approximately $107,987:

| Sprint Stock Profits | | | |
|---|---|---|---|
| Date | Account | Shares | Profits |
| 4/11/18 | Buyer joint account with cousin | 20,000 | $23,200.00 |
| 4/11/18 | Buyer IRA | 30,000 | $33,702.00 |
| 4/11/18 | Buyer SEP IRA | 60,000 | $48,000.00 |

| 4/11/18 | Friend-1 IRA | 2,675 | $3,084.81 |
| Total | | 112,675 | $107,986.81 |

33. The foregoing profits resulted from Buyer purchasing stock on the basis of material nonpublic information that he misappropriated from his client, T-Mobile. Those profits thus represent ill-gotten gains as of April 11, 2018.[1]

34. As set forth below, during the next year (2019), Buyer committed insider trading again, but spent even more on his stock purchases.

## II. Buyer Purchased Navigant Stock Based on Material Nonpublic Information Misappropriated From His Client

### A. Buyer Worked as a Consultant for Guidehouse

35. In November 2015, the Steve Buyer Group entered into a consulting agreement with Guidehouse (when Guidehouse operated under a different name). Guidehouse and the Steve Buyer Group, including Buyer, continued working under this consulting agreement through approximately December 2019.

36. Under the consulting agreement, the Steve Buyer Group agreed to, among other things, help Guidehouse establish and grow relationships with key stakeholders at the VA and in Congress. Also, under the consulting agreement, the Steve Buyer Group, including Buyer, agreed to keep business matters of Guidehouse confidential.

37. During Buyer's work for Guidehouse, he communicated with, among others, Guidehouse's Managing Director and U.S. Sales Leader ("Guidehouse Managing Director").

---

[1] T-Mobile and Sprint publicly announced their merger on April 29, 2018. And Buyer sold all 112,675 of the Sprint shares that he bought on August 6 and 7, 2018, resulting in actual profits of approximately $126,404, which is greater than the profits he generated as of April 11, 2018, when news of the merger was initially disclosed publicly.

9

**B.     Buyer Learned that Guidehouse Planned to Acquire Navigant**

38. In or around May through June of 2019, Guidehouse and Navigant were engaged in confidential discussions about a potential business combination in which Guidehouse would acquire Navigant. The planned acquisition of Navigant was material nonpublic information.

39. On June 12, 2019, in the course of conducting due diligence for the merger, a Guidehouse partner was analyzing potential business synergies if Guidehouse acquired Navigant, including RCM projects with the VA. At about 5:44 p.m., the Guidehouse partner sent an email to the Guidehouse Managing Director requesting information regarding "the total opportunity for RCM work at VA" that might be "unlocked through this combination" – referring to the combination between Guidehouse and Navigant.

40. At about 6:01 p.m., the Guidehouse Managing Director called Buyer by telephone regarding the Guidehouse partner's request for information. The Guidehouse Managing Director and Buyer spoke for approximately five minutes.

41. Between 6:19 p.m. and 6:28 p.m., Buyer communicated twice by telephone and twice by text with the then-Chief Counsel for the House Committee on Veterans' Affairs, to obtain the information sought by the Guidehouse Managing Director.

42. At 6:29 p.m., Buyer sent a text to the Guidehouse Managing Director, stating: "Budget MEdical [sic] Collections," and listing "2018 actual $3.516 B," "2019 inacted [sic] $3.627B," and "2020 request $3.912B." The VA-related RCM information in Buyer's text message was public.

43. One minute later, at 6:30 p.m., Buyer and the Guidehouse Managing Director spoke by telephone again for approximately seven minutes.

44. From his communications with the Guidehouse Managing Director on June 12, 2019, combined with his extensive knowledge of the VA and RCM space, Buyer ascertained that Guidehouse planned to acquire Navigant. Indeed, Buyer later admitted in an encrypted message to the Guidehouse Managing Director that he "figured" Guidehouse's acquisition target "was either Huron or Navigant …." Buyer knew, or was reckless in not knowing, that Guidehouse's planned acquisition of Navigant was material nonpublic information and that he was required to keep that information confidential.

          **C.**     **Buyer Purchased Navigant Stock Before the Acquisition Was Announced**

45. On June 13, 2019, the day after Buyer determined that his client planned to acquire Navigant, he began purchasing Navigant stock. Buyer did not buy any stock of Huron Consulting Group Inc., the other company mentioned in his encrypted message described above.

46. But just before purchasing Navigant stock, on the morning of June 13, 2019, Buyer again attempted to hide the fact that his purchases would be based on material nonpublic information. So, Buyer found a public Zacks report online recommending Navigant as a stock to purchase, and emailed that report to himself and his son to create the false impression that his purchases were based on information in the Zacks report, and not on material nonpublic information.

47. Then, between June 13, 2019, and August 1, 2019, while in possession of the material nonpublic information that Guidehouse planned to acquire Navigant, Buyer purchased 46,654 shares of Navigant stock, at a cost of more than $1 million.

48. Buyer spread the purchases across six separate accounts, including (1) an IRA owned by Buyer; (2) a SEP IRA owned by Buyer; (3) a joint account owned by Buyer and his son; (4) an IRA owned by Friend-1; (5) an account owned by Joni Buyer; and (6) a joint account owned by Buyer and Joni Buyer:

| Navigant Stock Purchases | | | |
|---|---|---|---|
| **Date** | **Account** | **Shares** | **Cost** |
| 6/13/19 | Buyer IRA | 10,300 | $231,511.63 |
| 6/13/19 | Buyer SEP IRA | 10,000 | $224,689.23 |
| 6/13/19 | Buyer joint account with son | 8,000 | $180,005.00 |
| 6/21/19 | Friend-1 IRA | 825 | $19,428.75 |
| 6/25/19 | Buyer SEP IRA | 3,980 | $92,243.83 |
| 7/9/19 | Friend-1 IRA | 129 | $2,986.35 |
| 7/10/19 | Buyer joint account with son | 2,000 | $46,400.00 |
| 7/19/19 | Buyer IRA | 3,700 | $90,095.00 |
| 7/26/19 | Joni Buyer account | 2,700 | $65,610.00 |
| 8/1/19 | Buyer joint account with Joni Buyer | 5,020 | $121,545.04 |
| **Total** | | **46,654** | **$1,074,514.83** |

49.     As of July 2019, the only purchases of securities ever made in Friend-1's account were Buyer's purchases of Sprint and Navigant stock, shortly before those companies were acquired by Buyer's clients.

**D.     When the Navigant Acquisition Was Announced Publicly, Buyer Profited**

50.     On August 2, 2019, before the NYSE opened for trading, Guidehouse publicly announced its acquisition of Navigant.

51.     As a result, the price of Navigant shares increased by nearly 17%, from a closing price of $24.04/share on trading volume of 221,581 shares on August 1, 2019 (the day before the

announcement), to a closing price of $28.06/share on trading volume of 5,346,414 shares on August 2, 2019 (the day of the announcement).

52. Thus, as of August 2, 2019, the Navigant shares that Buyer purchased increased in value by approximately $227,742:

| Navigant Stock Profits | | | |
|---|---|---|---|
| Date | Account | Shares | Profits |
| 8/2/19 | Buyer IRA | 14,000 | $69,160.71 |
| 8/2/19 | Buyer SEP IRA | 13,980 | $73,132.47 |
| 8/2/19 | Buyer joint account with son | 10,000 | $52,795.00 |
| 8/2/19 | Joni Buyer account | 2,700 | $9,836.06 |
| 8/2/19 | Buyer joint account with Joni Buyer | 5,020 | $18,616.06 |
| 8/2/19 | Friend-1 IRA | 954 | $4,201.50 |
| Total | | 46,654 | $227,741.80 |

53. The foregoing profits resulted from Buyer purchasing stock on the basis of material nonpublic information that he misappropriated from his client, Guidehouse. Those profits thus represent ill-gotten gains as of August 2, 2019.

54. The same day that the Navigant acquisition was announced, on August 2, 2019, Buyer sold 45,700 Navigant shares, representing all the shares that he purchased except the 954 shares in Friend-1's IRA. Buyer sold those 954 shares on September 23, 2019.[2]

---

[2] The actual profits from Buyer's sale of all 46,654 Navigant shares was approximately $227,774, which is greater than the profits generated as of August 2, 2019, when news of the acquisition was initially disclosed publicly.

13

**FIRST CLAIM FOR RELIEF**
**Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**
**(Against Defendant Buyer)**

55. Paragraphs 1 through 54 above are re-alleged and incorporated by reference.

56. Buyer knew, or was reckless in not knowing, that he owed a duty of trust or confidence to his clients, T-Mobile and Guidehouse, to protect their confidential information and not trade on that information for his own benefit.

57. Buyer knew, or was reckless in not knowing, that T-Mobile's planned acquisition of Sprint, and Guidehouse's planned acquisition of Navigant, represented material nonpublic information.

58. In breach of his duty of trust or confidence to his clients, T-Mobile and Guidehouse, Buyer knowingly or recklessly misappropriated the material nonpublic information about their planned acquisitions of Sprint and Navigant, respectively.

59. Buyer knowingly or recklessly purchased Sprint and Navigant securities on the basis of the material nonpublic information that he misappropriated from his clients.

60. By his conduct alleged herein, Buyer directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of a national securities exchange, in connection with the purchase or sale of securities, knowingly or recklessly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices, or courses of business that operated or would operate as a fraud or deceit upon any person.

61. Buyer thus violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.  Unless restrained and enjoined, Buyer will continue to violate those provisions of the federal securities laws.

### SECOND CLAIM FOR RELIEF
### Disgorgement to Prevent Unjust Enrichment
### (Against Relief Defendant Joni Buyer)

62. Paragraphs 1 through 54 above are re-alleged and incorporated by reference.

63. As described above, Relief Defendant Joni Buyer received certain ill-gotten proceeds from Buyer's insider trading in Navigant securities.

64. Joni Buyer has no legitimate claim to, and paid no consideration for, the ill-gotten proceeds that she received from Buyer's trades.

65. Under the circumstances, it would be inequitable for Joni Buyer to retain the proceeds from Buyer's violations of the federal securities laws.

66. Thus, to prevent unjust enrichment, Joni Buyer must disgorge, with prejudgment interest, all proceeds that she received from Buyer's insider trading in Navigant securities.

### PRAYER FOR RELIEF

Accordingly, the SEC respectfully requests that the Court enter a Final Judgment:

A. Finding that Buyer violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5;

B. Permanently restraining and enjoining Buyer from violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5;

C. Permanently prohibiting Buyer, pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2), from acting as an officer or director of any issuer that has securities

registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act;

      D.      Ordering Buyer and Joni Buyer to disgorge all of the ill-gotten gains that they received from the violations alleged herein, plus prejudgment interest, pursuant to Section 21(d)(7) of the Exchange Act, 15 U.S.C. § 78u(d)(7);

      E.      Ordering Buyer to pay civil monetary penalties pursuant to Section 21A of the Exchange Act, 15 U.S.C. § 78u-1; and

      F.      Granting any other relief that the Court deems appropriate or equitable.

## JURY DEMAND

The SEC demands a trial by jury on all issues so triable.

Dated: July 25, 2022

Respectfully submitted,

/s/ Timothy K. Halloran
Timothy K. Halloran (*pro hac vice* to be filed)
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549
Tel: 202-551-4414
Email: hallorant@sec.gov

Of Counsel:

D. Mark Cave
Securities and Exchange Commission